United States Court of Appeals
Fifth Circuit

**F I L E D**

December 8, 2005

Charles R. Fulbruge III
Clerk

In the

United States Court of Appeals

for the Fifth Circuit

_____

m 05-10239

_____

UNITED STATES OF AMERICA

Plaintiff-Appellee.

VERSUS

BECKY EKAETE AUSTIN,

Defendant-Appellant,

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before DAVIS, SMITH, and DENNIS,
   Circuit Judges.

PER CURIAM:

   Becky Austin appeals her sentence and presents the issue whether application of the remedial opinion in *United States v. Booker*, 125 S. Ct. 738, 756-69 (2005), to a sentencing hearing where the underlying offense was committed pre-*Booker* violates *ex post facto* and due process principles. Finding no mate-

rial difference between the instant case and *United States v. Scroggins*, 411 F.3d 572 (5th Cir. 2005), we affirm.

I.

   Austin was indicted on eight counts of health care fraud and money laundering and pleaded guilty to the first count, which involved the fraudulent submission of Medicare claims for a motorized wheelchair. The presentence report recommended an offense level of 19, premised on a base offense level of 6,

plus 14 levels for an intended loss of $773,722, plus 2 levels for abusing a position of trust, minus 3 levels for acceptance of responsibility. After considering extensive evidence, the district court reduced the loss total to the actual amount paid by Medicare on Austin's claims, $265,377.83, dropping her total offense level to 17, which carries with it a sentencing range of 24-30 months' imprisonment.

The district court explicitly recognized that, in light of *Booker*, the sentencing guidelines are advisory, not mandatory, and sentenced Austin to 24 months, the low end of the guideline range. Austin objected on the grounds that applying Justice Breyer's remedial opinion in *Booker* to her case, in which the underlying offense was committed under a mandatory guidelines regime, violates constitutional due process and *ex post facto* requirements, and that the court erred with respect to its loss determination.

## II.

Shortly after Austin filed her merits brief in this case, a panel of this circuit decided *Scroggins*, which rejected defendant's argument that the *Booker* remedial opinion cannot constitutionally be applied on remand for resentencing, where the criminal conduct at issue occurred before *Booker* was decided. *See Scroggins*, 411 F.3d at 576. The panel noted that *Booker* expressly states that "we must apply today's holdingsSSboth the Sixth Amendment holding and our remedial interpretation of the Sentencing ActSSto *all* cases on direct review," *id.* (citing *Booker*, 125 S. Ct. at 769, and that a contrary holding would run counter to our decisions stating that defendants suffered no prejudice from being sentenced under a pre-*Booker* regime, *id.* (citing *United States v. Mares*, 402 F.3d 511 (5th Cir.), *cert. denied*, 126 S.

Ct. 43 (2005)).

*Scroggins* controls here. The fact that Austin was sentenced post-*Booker*, as distinguished from Scroggins, whose case was on appeal when *Booker* was decided, does not affect the analysis. At the core of Austin's *ex post facto* and due process concerns are the "concepts of notice, foreseeability, and the right to fair warning," *Rogers v. Tennessee*, 532 U.S. 451, 459 (2001), particularly the claim that a person would have expected sentencing under a mandatory sentencing regime at the time when Austin committed her crime. This anticipation does not depend on the happenstance of when *Booker* was decided.

Austin's reliance on receiving a sentence within a particular guideline range is misplaced; 18 U.S.C. § 1347 provided her with fair warning that she was liable to receive up to ten years' imprisonment for the acts she committed. Regardless of whether the particular evidentiary standards used by the court, or the specific division of labor between judge and jury, would withstand future constitutional attack, the statute "was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act" of health care fraud. *Dobbert v. Florida*, 432 U.S. 282, 297 (1977).[1]

Moreover, even though Austin was theoretically exposed to a higher penalty (though still no higher than the statutory maximum) under

---

[1] *See also United States v. Duncan*, 400 F.3d 1297, 1307 (11th Cir.), *cert. denied*, 126 S. Ct. 432 (2005) (finding that application of the *Booker* remedial opinion does not violate *ex post facto* principles where statute imposes maximum sentence of life imprisonment).

2

an advisory guideline regime, her sentence was on the low end of the guideline range she would have faced regardless of *Booker*. For the above reasons, her *ex post facto* and due process arguments fail.[2]

AFFIRMED.

---

[2] We likewise reject Austin's argument that the district court erred in its calculation of the amount of loss. We review a loss calculation for clear error. *See United States v. Anderson*, 174 F.3d 515, 526 (5th Cir. 1999). The district court based its loss calculation on the amount paid by Medicare on Austin's claims, and made the reasonable inference from Austin's stipulation to one fradulent claim that all of the similar claims under consideration were part and parcel of the same fraudulent scheme.